Carol Monica FRAUSTO, Petitioner,

v.

UNITED STATES DEPARTMENT OF COMMERCE, Respondent.

No. 05–AA–472.

District of Columbia Court of Appeals.

Argued May 22, 2007.
Decided June 14, 2007.

Barbara McDowell for petitioner.

Kristin Hanmer for respondent.

Before REID and BLACKBURNE-RIGSBY, Associate Judges, and WAGNER, Senior Judge.

WAGNER, Senior Judge:

Petitioner, Carol Monica Frausto, petitions for review of a decision of the Office of Administrative Hearings (OAH) denying her motion for relief from a final order reversing a decision of the District of Columbia Department of Employment Services (DOES) awarding her unemployment compensation. She argues that the OAH abused its discretion in denying the motion. We reverse and remand the case for further proceedings.

## I.

### Factual and Procedural Background

During 2004, Frausto was employed as a program manager in a division of the Office of the General Counsel at the Department of Commerce (the employer) when she began an extended period of absence from work. On January 6, 2005, Frausto's supervisor, Stuart Kerr, sent her a letter notifying her officially that he proposed to remove her from her position and that her leave status was being changed to AWOL. In explanation of the proposed action, Kerr outlined the following circumstances. On July 12, 2004, he had sent Frausto a letter informing her that she was placed in an unpaid status as of July 9, 2004 because she had exhausted all of her annual and sick leave. On July 22, 2004, he had sent her another letter requesting a written request for leave without pay and medical documentation supporting her absence up to that time. On August 2, 2004, Kerr received from Frausto an undated Office of Personnel Management (OPM) form 71 requesting a combination of accrued annual leave and sick leave and leave without pay and invoking her entitlement to leave for a serious medical condition under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (2001) (FMLA). That same day, Kerr sent Frausto a form to be completed by her physician. On August 12, 2004, he sent Frausto another letter stating that she was entitled to up to twelve administrative work weeks of unpaid leave for a serious medical condition and approving her leave under the FMLA, subject to his receipt of the medical documentation. He also enclosed another form for her physician's certification. On August 23, 2004, Frausto faxed to the agency's Office of Human Resources Operations thirty-two pages of documents, but she did not include a medical certification for her absence since August 2, 2004. Kerr sent

Frausto letters on September 10, 2004 and October 23, 2004 reminding her of the requirement that she submit medical documentation. In the letter of September 10th, he warned her that her status could be changed to AWOL and disciplinary action initiated which could include her removal from Federal service. In his January 6th letter to Frausto, Kerr stated that Frausto had failed to provide the medical documentation and therefore, he had changed her leave status from FMLA leave without pay to AWOL beginning August 2, 2004.

The employer acknowledged that on January 19, 2005, Frausto sent a letter to its Administrative Officer attaching a letter dated January 6, 2005 from Dr. Adam Lowery in which he stated that Frausto had been a patient under his care at the Psychiatric Institute of Washington D.C. from June 5, 2004 to June 18, 2004 and from July 12, 2004 to July 19, 2004 until her discharge, but that he had not evaluated her since. The agency adopted Kerr's recommendation to terminate Frausto's employment effective February 11, 2005 and notified her by letter dated February 2, 2005. The letter stated that although Frausto's prior work record was a mitigating factor, it was outweighed by the seriousness of the misconduct. The agency referenced as mitigating circumstances Frausto's eight years of satisfactory government service and the lack of any prior disciplinary record.[1]

Shortly before official notification of her termination, Frausto applied for unemployment compensation through the DOES. The "Determination by a Claims Examiner" dated January 31, 2005 found Frausto eligible for benefits and that "[m]isconduct had not been established." The reasons given for that determination were as follows:

Claimant is in a L.W.O.P. status from her job as Programmer. Claimant has a[n] EEO situation with the agency and employer has informed her not to report to work. Employer instituted claimant[']s separation, therefore, no misconduct established.

The employer appealed the Claims Examiner's determination to the OAH and requested a hearing. OAH entered an order scheduling a hearing on March 2, 2005 at 9:30 a.m. The order and notice of the hearing stated that "[f]ailure of a party to appear at the hearing may result in a default, dismissal, or other unfavorable outcome." It also stated that "[a] written request for postponement must be filed with the Office of Administrative Hearings in accordance with OAH Rule 2812 (1 DCMR 2812) at the earliest possible time, after making a good faith meaningful effort to contact the opposing party and asking for that party's consent to the postponement."

Frausto did not appear at the scheduled hearing, and the Administrative Law Judge (ALJ) announced that the case would proceed in her absence.[2] Kerr was the employer's only witness at the hearing. On April 18, 2005, OAH issued its decision reversing the Claims Examiner's determination and finding Frausto ineligible for unemployment benefits. The ALJ found that the agency had "met its burden of demonstrating that [Frausto] engaged in misconduct rising to the level of gross misconduct by disregarding her obligation

---

1. The employer's final letter of termination stated to Frausto that "[y]ou did an outstanding job as an international program specialist and you won a competitive slot for a program manager. You were very dependable and quite capable of working independently."

2. The transcript shows that the hearing commenced at 9:43 a.m. and ended at 9:59 a.m.

to [the employer] and standards of behavior, which an employer has a right to expect of its employee." On May 5, 2005, petitioner submitted a motion for relief from OAH's final order and a request for a hearing in which she explained that she had not attended the scheduled hearing because there had been a fire in her home on February 25, 2005 that required her to be taken to the hospital for treatment of smoke inhalation and prevented her from living in her home until March 2, 2005, the scheduled hearing date. Further, Frausto stated that she had telephoned the clerk's office on the morning of the hearing to report that she was unable to attend and to request that the hearing be rescheduled. On August 17, 2005, the OAH denied Frausto's motion for relief from its final order. In the order denying the motion, OAH acknowledged that if credited, the circumstances presented "[are] almost universally good cause justifying continuation of a trial date," if made seasonably. The ALJ concluded, however, that Frausto's request was not made seasonably and that she did not provide a basis for a finding of good cause to excuse her failure to appear. Frausto filed a petition for review in this court.

## II.

### A. Applicable Legal Principles

Frausto argues that the OAH abused its discretion in denying her request to reopen the case under its rule that is comparable to Super. Ct. Civ. R. 60(b). She contends that in denying her relief, the OAH failed to undertake the necessary factual inquiry or to consider all relevant factors.[3] The employer responds that Frausto failed to show that her non-appearance resulted from excusable neglect and that she has a meritorious defense.

Section 2833.2 of 1 DCMR Chapter 28, applicable in proceedings before the OAH, is comparable to Super. Ct. Civ. R. 60(b). Section 2833.2 provides, in pertinent part, that

the administrative court may relieve a party ... from a final order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or ... any other reasons justifying relief from the operation of the final order. Relief under this Section may be granted only to the extent it could be granted under the standards of D.C. Superior Court Civil Rule 60.

Thus, the OAH's rule explicitly adopts the standards applicable to motions under Super. Ct. Civ. R. 60. In considering motions filed under Rule 60(b), the court must consider

whether the movant (1) had actual notice of the proceedings; (2) acted in good faith; (3) took prompt action; and (4) presented an adequate defense. Prejudice to the non-moving party is also relevant.

*Nuyen v. Luna*, 884 A.2d 650, 656 (D.C. 2005) (quoting *Starling v. Jephunneh Lawrence & Assocs.*, 495 A.2d 1157, 1159–60 (D.C.1985)). "In exercising its discretion, the trial court must [also] weigh [the strong judicial policy favoring adjudication on the merits of a case] against [the] strong policy favoring the finality of judgments." *Nuyen*, 884 A.2d at 656 (citations and internal quotation marks omitted). However, this court has said that "[t]he failure to inquire into the factors bearing on a motion to vacate 'too heavily tip[s] the

---

**3.** *Frausto also argues that the OAH erred in* proceeding with the evidentiary hearing without making an inquiry of the clerk's office or otherwise taking reasonable steps to prevent forfeiture of her right to participate in the hearing. In light of our disposition, we need not address this issue.

scales in favor of the need for finality in litigation.'" *Id.* at 657 (quoting *Walker v. Smith,* 499 A.2d 446, 449 (D.C.1985)). This court reviews a decision on a motion for relief under Rule 60(b) for an abuse of discretion. *Reid v. District of Columbia,* 634 A.2d 423, 424 (D.C.1993) (citations omitted). "[B]ecause of the policy favoring resolution of litigation on the merits, 'even a slight abuse of discretion in refusing to set aside a judgment may justify reversal.'" *Id.* (quoting *Starling,* 495 A.2d at 1159) (other citations omitted). Applying these principles, we turn to consideration of Frausto's arguments.

## B. Analysis

■ Frausto argues that the OAH abused its discretion in denying her *pro se* motion for relief under the standards applicable to motions under Rule 60(b). She contends that the OAH failed to consider properly all of the factors relevant to a disposition of such motions and to provide reasons for its decision. Specifically, she contends first that she presented a compelling reason for not appearing at the hearing and acted promptly thereafter. *See Nuyen, supra,* 884 A.2d at 656 (setting forth good faith and prompt action as factors for consideration for relief under Rule 60(b)).[4] She argues that displacement from her home by a fire constitutes excusable neglect within the meaning of Section 2833.2 and Rule 60(b)(1). The employer disputes that Frausto described sufficiently circumstances supporting the claim that her inability to attend the scheduled hearing was unavoidable because of the fire.

As Frausto points out, the ALJ recognized, as stated in the order, that she was "requesting that the court reconsider the final decision because of a fire that oc-curred at [her] home, which prevented her from attending the March 2, 2005, hearing." The ALJ acknowledged that "the sad circumstance of a fire, such as allegedly occurred here, is almost universally good cause justifying continuation of a trial date, if made seasonably." The ALJ then apparently concludes that Frausto's continuance request was not made seasonably. In reaching that conclusion, however, the ALJ did not address Frausto's assertion in the motion that she had called the clerk's office on the morning of the hearing to explain her inability to attend the hearing and to request a new hearing date. Frausto's effort to secure a continuance on the morning of the hearing is a factor relevant to the decision-maker's consideration of the promptness and good faith of her actions. *See King v. District of Columbia Water and Sewer Auth.,* 803 A.2d 966, 970 (D.C.2002) (reversing agency's dismissal of protest for non-appearance with the observation that the petitioner who telephoned the agency within an hour of the hearing with a plausible explanation for the inability to appear was not a classic "no-show"). Therefore, the ALJ should have addressed it. To the extent that the ALJ deemed it necessary for Frausto to substantiate her claim that she called the clerk's office to request a continuance, the ALJ should have given her an opportunity to provide it. *See Miranda v. Contreras,* 754 A.2d 277, 280 (D.C.2000) (recognizing "the trial court's 'responsibility to inquire where matters are raised which might entitle the movant to relief under Rule 60(b)'") (quoting *Starling, supra,* 495 A.2d at 1162).

The order does not suggest that Frausto failed to act promptly to reopen her case after she learned of the OAH's order. In

---

4. The first factor, whether the moving party had actual notice of the proceeding, is not an issue in this case.

fact, Frausto filed her motion under Section 2833.2 within three weeks of the entry of OAH's final order. This is within the time that similar motions have been deemed to be timely. *See, e.g., Brown v. Kone, Inc.,* 841 A.2d 331, 334 (D.C.2004) (observing that the moving party may have acted with reasonable promptness where she learned of dismissal of the complaint in mid-January and moved to vacate the dismissal order in mid-February); *Pfeister–Barter, Inc. v. Laois,* 499 A.2d 915, 916, 918 (D.C.1985) (concluding that a party acted expeditiously in moving to set aside default judgment within three weeks thereafter). Under the circumstances, there is no basis in the record for the ALJ to have weighed the promptness factor against Frausto. On the contrary, on the present record, the promptness factor would weigh in favor of granting the motion.

The ALJ also failed to address *directly* whether the circumstances of the fire and its aftermath did or did not constitute a basis for a finding of excusable neglect for purposes of Frausto's motion to set aside the final order. Therefore, we are left to speculate why the ALJ deemed the circumstances that Frausto presented would have been sufficiently compelling to grant a continuance request, but insufficient for a finding of excusable neglect under Rule 60(b). The circumstances described by Frausto in support of her request to reopen the case are equally, if not more compelling than those in other cases where the movant prevailed on the motion. *See, e.g., Johnson v. Lustine Realty Co., Inc.,*

640 A.2d 708, 709 (D.C.1994) (reversing the trial court's denial of a Rule 60(b) motion where the attorney and his client failed to appear because the praecipe setting a status hearing had been misfiled in his office);[5] *Reid, supra,* 634 A.2d at 424–25 (reversing denial of request for relief under Rule 60(b)(1) where counsel and his client missed a court date because counsel failed to notice that the date had been set under a new procedure).[6]

■ The employer suggests that the reason the OAH found against Frausto is that she failed to provide a clear causal relationship between the circumstances of the fire and its aftermath and the need for a continuance. One difficulty with the employer's suggestion is that, as a general rule, " 'this court cannot uphold a[n] [agency] decision on grounds other than those actually relied on by the agency.' " *District of Columbia v. District of Columbia Dep't of Employment Servs.,* 734 A.2d 1112, 1115 n. 3 (D.C.1999) (quoting *Jadallah v. District of Columbia Dep't of Employment Servs.,* 476 A.2d 671, 675 n. 3 (D.C.1984)). Here, there is no indication that the ALJ relied upon the alleged deficiency in Frausto's pleading, as suggested by the employer. In any event, we conclude that the nexus between the fire and Frausto's inability to attend the hearing was sufficiently stated for purposes of the motion. While a skilled lawyer might have presented the facts in support of the request for relief under Rule 60(b) in greater detail, this *pro se* litigant provided enough information to show that the fire and its related consequences during the brief peri-

**5.** In *Johnson,* this court's decision was also based on the trial court's failure to consider the strong policy favoring adjudication on the merits, the likelihood of prejudice to the nonmoving party and the possibility of other sanctions. *Johnson, supra,* 640 A.2d at 708.

**6.** In *Reid,* the court also based its ruling on the trial court's failure to inquire whether counsel's actions constituted excusable neglect or the other factors bearing on the decision (*i.e.,* notice, good faith, prompt action, prejudice or evidence of prior unjustified delays or non-compliance with court rules). *Reid, supra,* 634 A.2d at 425.

od immediately preceding the hearing prevented her from attending the hearing. Where, as here, the movant raises matters that appear to entitle her to relief, it is the hearing tribunal's responsibility to inquire into them. *See Miranda, supra,* 754 A.2d at 280 (citation omitted); *accord, Reid, supra,* 634 A.2d at 425 (citation omitted). Here, the record shows that the OAH took no steps to inquire further into Frausto's explanation for her inability to attend the hearing, even assuming that it deemed her statement of the reasons to be insufficient to show that her claim of excusable neglect was related to the fire and its consequences.

Frausto also argues that the decision should be reversed because the OAH failed to provide reasons for its determination. This court has stated that the trial court has a responsibility not only to consider the factors pertinent to a Rule 60(b) motion, but also to state the reasons for its decision. *Nuyen, supra,* 884 A.2d at 656–57 (finding that the trial court abused it discretion in denying a motion to vacate under Rule 60(b) where the trial court's order failed to indicate that it had inquired into the relevant factors and stated no reasons for denial of the motion). In this case, there is no indication that, in denying the motion, the OAH addressed the factors most relevant to its determination. Specifically, there is no discussion in the OAH's order concerning Frausto's good faith or lack of thereof, potential prejudice to the parties, the strong policies favoring an adjudication on the merits and finality of judgments. *See id.* (specifying the factors pertinent to consideration of a motion under Rule 60(b) and the court's responsibility to consider them when exercising its discretion). The order does not explain why the circumstances that Frausto contends led to her failure to appear do not constitute excusable neglect within the meaning of the rule. These omissions lead

us to conclude that the OAH abused its discretion in denying the motion. *See id.* at 657.

 The employer argues that the OAH properly denied the motion because Frausto failed to state a meritorious defense that, if proven, would result in a reversal of the OAH's determination. Under our Rule 60(b), a moving party "must offer a 'sufficient elaboration of the facts . . . to permit the trial court to conclude whether the defense, if found to be true, is adequate.'" *Nuyen, supra,* 884 A.2d at 657 (quoting *Tennille v. Tennille,* 791 A.2d 79, 83 (D.C.2002)). It is not required that the moving party show a likelihood of success on the merits. *Id.* (citation omitted). All that is required is that the moving party provide "reason to believe that vacating the judgment will not be an empty exercise or a futile gesture." *Id.* (citing *Murray v. District of Columbia,* 311 U.S.App. D.C. 204, 206 52 F.3d 353, 355 (1995)).

The OAH did not address this factor or rest its decision denying the motion on this ground. As previously stated, we will not sustain an order on grounds not relied upon by the agency. *See Jadallah, supra,* 476 A.2d at 675 n. 3. In any event, the OAH has in the record sufficient information to show that Frausto can meet her burden of showing that setting aside its order will not be a futile gesture. In this case, Frausto initiated a claim for unemployment compensation benefits and prevailed at the initial stage before the DOES. The Claims Examiner found that misconduct had not been established and stated as reasons for its determination that Frausto "ha[d] a[n] EEO situation with the agency and employer ha[d] informed her not to report to work." Even assuming that Frausto was required to make a *prima facie* showing of her entitlement to unemployment benefits in support of her motion, the findings and determination of

DOES are sufficient to satisfy that requirement here.[7] Although the Claims Examiner's determination is not entitled to deference at the subsequent OAH review hearing,[8] it nevertheless provided information that Frausto had a different version of events surrounding her failure to report for work than the employer presented at the hearing. For purposes of the motion, no additional showing was required to support the conclusion that vacating the order would not be a futile gesture.[9]

For all of the foregoing reasons, we conclude that the OAH abused its discretion in denying Frausto's motion for relief under Section 2833.2. Therefore, we reverse and remand to OAH for further proceedings consistent with this opinion.

*So ordered.*

7. There is nothing in the OAH's rule to alert a party, particularly a *pro se* party, of the requirement to present an adequate defense or a *prima facie* case. Although the OAH rule references Rule 60(b), that requirement is not stated in the rule itself. It is derived from our case law. Frausto argues that it is not clear that one in her position (*i.e.*, the successful party at the initial stage of her request for unemployment compensation) is required to show an adequate defense even under Rule 60(b). She cites this court's decision in *Lester v. District of Columbia*, 806 A.2d 206, 208 n. 2 (D.C.2002) where we observed that an adequate defense is irrelevant to a Rule 60(b) motion filed by a plaintiff. We agree that, in the circumstances of the present case as above-described, no additional showing was required for purposes of the motion.

8. *See Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 180 (D.C.2006) (holding that the OAH properly accorded no deference to the determination of the Claims Examiner where the administrative review of unemployment compensation claims is conducted *de novo* ).

9. Frausto also argues that she has a plausible basis to challenge a finding of gross misconduct, including: (1) the inadequacy of the employer's evidence to support such a finding; and (2) a mental condition that prevented her from responding to the employer's requests in a manner that it deemed adequate. "Gross misconduct" is defined by regulation as "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee. 7 DCMR § 312.3 (1994). Therefore, she contends that some inquiry into her mental state and actions is relevant under this definition. The employer contends that Frausto has no basis to refute the finding because the regulation provides as an example of gross misconduct, "repeated absence ... following warning," *see* 7 DCMR § 312.4, which was shown here. Whatever the merits of the parties' respective positions, Frausto has not had an opportunity to be heard by OAH on the issue. Therefore, she should have that opportunity on remand.